# THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
OFFICE OF THE GENERAL COUNSEL



1111 Franklin Street, 8th Floor • Oakland, California 94607-5200 • (510) 987-9800 • FAX (510) 987-9757

Charles F. Robinson
VICE PRESIDENT AND GENERAL COUNSEL

E-mail: christopher.patti@ucop.edu

July 24, 2007

The Honorable Maria-Elena James
United States Magistrate Judge
United States District Court for the
 Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

Re:    Holloway v. Best Buy Co., Inc. (No. 3:05-ev-05056-PJH)

Dear Judge James:

Third-party witness Alexandra Kalev, Ph.D. and Defendant Best Buy Co., Inc. submit this joint letter pursuant to Your Honor's Standing Order regarding Discovery and Dispute Procedures. On May 4, 2007, Best Buy served a subpoena *duces tecum* upon Dr. Kalev, a researcher at UC Berkeley, seeking the production of documents and data related to certain papers Dr. Kalev has published. After Dr. Kalev served objections to producing documents and data in response to the subpoena, Best Buy served a second subpoena *duces tecum* upon Dr. Kalev on July 12, 2007, seeking production of the same documents and directing her to appear at a deposition on July 26, 2007. The parties met and conferred in person on July 17, 2007. On July 18, 2007, Best Buy agreed to narrow the scope of the subpoena to categories 1-11 of Exhibit A with respect to three published and/or unpublished papers (items 4, 5 and 6 on the Appendix). Dr. Kalev seeks to quash the subpoenas, including the July 12 subpoena demanding her appearance at a deposition on July 26. Best Buy seeks to compel Dr. Kalev to comply with the subpoenas as narrowed.

## Dr. Kalev's Position

Dr. Kalev is *not* an expert or consultant for either party and has *not* conducted research on Best Buy. Although Best Buy has narrowed its subpoena to eliminate some of the most obviously irrelevant matters (for example, Dr. Kalev's work on labor management models in Palestine and Israel during the 1940's and 1950's), it still demands every communication, e-mail with co-authors, early draft and all supporting data and references related to three of Dr. Kalev's research

The Honorable Maria-Elena James
July 24, 2007
Page 2

papers. These address a range of workplace issues, including the efficacy of various practices in achieving workplace equity, the impact of work teams on management diversity, and the impact of layoffs on women and minorities. One of the papers *is not yet published*, another is a working paper *still in preparation*. Best Buy appears particularly interested in an electronic dataset Dr. Kalev developed and continues to use in some of her research.

Best Buy's subpoenas should be quashed pursuant to FRCP 45(c)(3)(B)(ii). Adopted in 1991, that Rule was, according to The Advisory Committee Notes, intended to address "[a] growing problem" of "the use of subpoenas to compel the giving of evidence and information by unretained experts" by establishing "the right of such persons to withhold their expertise" absent the subpoenaing party's showing of "substantial need" and "undue hardship." A key rationale for the rule was protection of experts' intellectual property, such as the research dataset Dr. Kalev has compiled. (See id.) Rule 45(c)(3)(B)(ii) plainly applies to Best Buy's subpoena of Dr. Kalev: the Rule protects not only her opinion, but "information . . . resulting from the expert's study."

Courts applying Rule 45(c)(3)(B)(ii) have set a high bar for parties to demonstrate "substantial need" and "undue hardship," rarely allowing *any* discovery from unretained experts. See, e.g., *Chavez v. Board of Education*, 2007 U.S. Dist. LEXIS 34506 (quashing deposition subpoena for failure to show substantial need); *Larson v. Westlake Vinyls Inc.*, 2007 U.S. Dist. LEXIS 29044 (D. MD. 2007)(same); *Bio-technology General Corp. v. Norvo Nordisk A/S*, 2003 U.S. Dist. LEXIS 7911 (D. Del. 2003)(same); *Schering Corp. v. Amgen, Inc.,* 1998 U.S. Dist. LEXIS 113452 (D. Del. 1998)(same). The fact that unretained experts have published research directly relevant to issues in litigation does not create "substantial need" for deposing them regarding their research. See *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, 2007 U.S. Dist. Lexis 24969 (D. Utah 2007). As one court has stated, "[o]pportunity enough exists in the judicial process for an adversarial exploration of truth in litigation without the necessity of conscripting non-witness researchers into discovery and trial appearances." *Builders' Ass'n of Greater Chicago v. City of Chicago*, 2001 U.S. Dist LEXIS 14076 (N.D. Ill. 2001)(quotation omitted). This Court and the Ninth Circuit have taken an extremely dim view of parties who, like Best Buy here, fire off blunderbuss subpoenas to unretained experts that seek material with no bearing on the litigation. See *Mattel, Inc. v. Walking Mountain Productions*, 335 F.3d 792 (9th Cir. 2003) (holding that such tactics justify sanctions and quashing even relevant requests).

Best Buy cannot demonstrate "substantial need" or "undue hardship." Best Buy's claimed basis for the subpoena is its belief that plaintiffs' expert *might* cite or rely on *some* of Dr. Kalev's research findings—*even though the parties have not yet even designated experts*. The "need" Best Buy asserts, rather than "substantial," is entirely hypothetical. Even if some of Dr. Kalev's research becomes an issue, Best Buy does not need discovery from her to evaluate it. Best Buy and its experts are able, without discovery from Dr. Kalev, to (1) evaluate the publications themselves, which have been (or will be) extensively peer reviewed prior to publication and which set forth Dr. Kalev's methodology in detail (See *Glaxosmithkline,* supra); (2) conduct their own research if they seek to dispute Dr. Kalev's findings; and (3) seek the assistance of the many other researchers (cited in Dr. Kalev's papers) who have published research on the same issues.

The Honorable Maria-Elena James
July 24, 2007
Page 3

Accepting Best Buy's meager showing of "necessity"— nothing more than the assertion that Dr. Kalev has published research in a relevant field—would erase all limits on discovery from unretained experts. Under Best Buy's standard, any party to litigation would be permitted to subpoena the research and private papers of every scholar who had ever published research in any field even possibly relevant to the case.[1] That is just what Rule 45(c)(3)(B)(ii) was intended to prohibit.

On the other hand, Best Buy's subpoenas would impose unreasonable burdens. Appearance at a deposition would be extremely burdensome for Dr. Kalev, who is caring for a newborn infant and about to begin a new position at the University of Arizona. Invasion of her confidential research data and private communications would have severe consequences. Dr. Kalev obtained portions of her data from the EEOC, under strict confidentiality requirements, violation of which is a crime. (See 42 U.S.C. § 2000e-8.) She obtained other portions from employers—whose cooperation was entirely voluntary--under explicit promises of confidentiality. Because of the detailed nature of the information about participating employers in the dataset, that confidentiality could not be preserved merely by redacting employer identities. Allowing defendant's experts access to Dr. Kalev's dataset would (1) permit them to use her intellectual property for their litigation analysis, (2) potentially preempt, and therefore interfere with, additional analyses if the data that Dr. Kalev plans to publish, (3) discourage companies from participating in future academic research by undermining their confidentiality, see *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998), and (4) create burdens for researchers generally (such as the intrusion into their private correspondence with collaborators) that would discourage them from engaging in work that could be relevant to litigation. Of particular concern is Best Buy's attempt to intrude into Dr. Kalev's on-going research by seeking material related to unpublished papers, which raises separate constitutional issues. *Id.* Enforcing the subpoenas will likely have severe negative consequences for Dr. Kalev's future research.

<u>Best Buy's Position</u>

Best Buy's subpoenas seek discovery of documents and data from, and a deposition of, Dr. Kalev regarding her gender/racial stereotyping and unconscious bias research, central themes of Plaintiffs' Complaint. Dr. Kalev is one of the few researchers attempting to connect this research to workplace decisions, and therefore is regularly relied upon by experts retained by Plaintiffs' counsel in similar cases. Best Buy does not seek Dr. Kalev's opinion regarding such matters, but merely the factual underpinnings, documents and data supporting her research. Dr.

---

[1] *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass 2006), does not support Best Buy. That case held that Rule 45(c)(3)(B)(ii) did not protect a third party witness who had information, acquired through the course of his legal practice, that could be directly relevant to the existence of an industry-wide price fixing conspiracy—specifically, whether the price for certain underwriting services was non-negotiable. In contrast, the supposedly "underlying information" Best Buy seeks is information "resulting from [Dr. Kalev's] study" that is asserted to be relevant only because it supports her expert opinions. The Rule explicitly protects such information, and courts have expressly reject similar assertions that a subpoena seeking an expert's research data is not covered by the Rule. See *Glaxosmithkline; Schering.* Nor does *Wright v. Jeep Corp.*, 437 F.Supp. 871, 874 (D. Mich. 1982), support Best Buy, since that case pre-dates Rule 45(c)(3)(B)(ii) and is apparently an example of the "growing problem" of compelled expert discovery that Rule was intended to combat.

The Honorable Maria-Elena James
July 24, 2007
Page 4

Kalev seeks to quash the subpoenas on the grounds that they are burdensome, seek confidential research and seek discovery from an unretained expert. *But see In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass. 2006) (permitting such discovery, over virtually the same objections, of a non-party author's work). Best Buy responded to her objections by: (a) significantly limiting the scope of the subpoenas, (b) offering to protect confidentiality, and (c) offering to compensate her for gathering documents and appearing for deposition. Despite this, Dr. Kalev contends that Best Buy is not entitled to *any* discovery. Given Best Buy's need for the information to defend itself, Dr. Kalev must prove the merits of her objections.

The relevance of the evidence sought from Dr. Kalev to Best Buy's defense is made plain by Plaintiffs' Complaint. It alleges that Best Buy's hiring, promotion, compensation and performance evaluation practices are tainted by *implicit* prejudice and *unconscious* bias. In similar lawsuits, in support of a class certification motion, Plaintiffs' counsel routinely offers "expert" testimony of a social scientist who opines that unless an employer thwarts these alleged tendencies, unconsciously biased decision-making inevitably results.[2] These testifying experts base their opinions largely on studies performed by other social scientists. They purport to extract governing principles from the research literature and apply those conclusions to the defendant without any first-hand measurement or observation of the defendant. Kalev's article, "Best Practices or Best Guesses? . . " is one of the few that purports to address whether corporate policies are effective or ineffective in stemming unconscious bias, and therefore it is regularly relied upon.

Because Dr. Kalev's data and related documents are unpublished,[3] Best Buy's ability to obtain them (particularly the dataset that underlies the research in question) is essential. Without it, Best Buy will confront a testifying expert able to hide behind Dr. Kalev's research, knowing that its foundations lie beyond Best Buy's reach. *See Wright v. Jeep Corp.*, 547 F.Supp. 871, 874 (D. Mich. 1982) ("There is a high probability that the results of Professor []'s research will be used at trial by plaintiff,..., and ... the underlying facts ... help the court judge the validity of the conclusions.") Since Dr. Kalev's research and data are not publicly available, it cannot be critically assessed if these subpoenas are quashed. *Id.* ("[I]f the conclusions or end product of a research effort is to be fairly tested, the underlying data must be available to others equally skilled and perceptive).

Contrary to Dr. Kalev's position, Rule 45(c)(3)(B)(ii) does not apply because Best Buy does not seek to make her its involuntary expert, but merely seeks to obtain and understand documents and data underlying her research. *See PLE Antitrust Litig.*, 233 F.R.D. at 77. Even if Dr. Kalev were considered an "unretained expert witness," the Rule does not provide a basis for her to quash the subpoenas because the discovery sought is critical to Best Buy's ability to defend itself

---

[2]  Dr. Kalev suggests that the subpoena is premature because the parties have not yet disclosed experts. Plaintiffs' counsel has disclosed testimony of social science experts in each of the discrimination cases it has filed with nearly identical allegations. Nonetheless, should Plaintiffs disclaim their intention to introduce such testimony in this case, Best Buy will lift its subpoena since the issue then will be moot.
[3]  Though Dr. Kalev notes that her published articles have been peer reviewed, she has never provided to the American Sociological Review data or documents sought here.

The Honorable Maria-Elena James
July 24, 2007
Page 5

in this litigation and, as such, there exists a substantial need to obtain it. Moreover, the purpose of Rule 45(c)(3)(B)(ii) is to preclude parties from compelling unretained experts to produce information or testimony without compensation. *See Chavez v. Board of Education,* 2007 U.S. Dist. LEXIS 34506, *11 (D.N.M. 2007); *see also* Adv. Comm. Notes to 1991 Amendments. Rather, a party may subpoena the testimony of an unretained expert where that party has a substantial need for the information and where the non-party is reasonably compensated, as Best Buy has offered to do. Finally, Best Buy cannot obtain the discovery it seeks from another source without undue hardship since Dr. Kalev is the only source of the information sought.

Dr. Kalev also objects based on vague assertions of confidentiality. As to her correspondence with colleagues, journal referees, and others subject to the subpoenas, this objection fails. Prior drafts of her research papers and results are also not privileged or confidential.[4] Also, Dr. Kalev represented to the EEOC that the dataset she created in the course of her work using EEO-1 data (which Best Buy seeks here) was stripped of confidential information ("We merged the survey data with the annual EEO-1 data . . . and removed all identifying information."). She cannot explain why redacting identifying data fields, along with a confidentiality order, would not adequately protect confidentiality concerns. *See Compaq Computer Corp. v. Packard Bell Elecs.,* 163 F.R.D. 329 (N.D. Cal. 1995). Also, Best Buy minimized any burdens by narrowing the scope of the subpoenas, thus limiting its request to documents and data underlying only a small portion of her work. Best Buy offered to compensate Dr. Kalev for time spent responding to the subpoenas, and offered to postpone her deposition by as much as 60 days, and depose her at a mutually convenient location.

Finally, Dr. Kalev refuses to produce documents and data regarding her research even though the Robert Wood Johnson Foundation, which paid her salary at UC Berkeley expects that the research conducted by its scholars will be "widely shared."[5] Such disclosure is also expressly encouraged by the National Science Foundation, which funded her studies, and the American Sociological Association, which published her "Best Practices" paper. Indeed, the notions of "secret" data or research" are anathema to the progress of science, which advances only through public testing and the possible falsification of hypotheses.

_____
Christopher M. Patti
Counsel for Alexandra Kalev, Ph.D

_____
Roman M. Silberfeld
Counsel for Defendant Best Buy Co., Inc.

cc. B. Lee

---

[4] As Dr. Kalev notes, her research relies upon EEO-1 data provided to her in confidence by the EEOC. Although that same data underlies an expert report submitted by Plaintiffs' counsel in another case before this Court, *Ellis v. Costco, Inc.,* Best Buy intends to obtain that data from other sources should Plaintiffs introduce it in this case as well, and has assured Dr. Kalev that it seeks only the dataset which underlies her research and that she *personally* created using EEO-1 data.

[5] See Robert Wood Johnson Foundation website, www.rwjf.org.

# EXHIBITS

OAO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

JASMEN HOLLOWAY, AMY GARCIA, CHERYL CHAPPEL, MUEMBO MUANZA, MAURICE CALHOUN, and NICHOLAS DIXON, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BEST BUY, CO., INC., Defendant.

**SUBPOENA IN A CIVIL CASE**

Case Number1: 3:05-cv-05056-PJH

TO:   Alexandra Kalev
     University of California
     140 Warren Hall, MC 7360
     Berkeley, CA 94720-7360

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**SEE "EXHIBIT A" AND APPENDIX ATTACHED HERETO**

| PLACE: Littler Mendelson, P.C.<br>650 California Street, 20th Floor<br>San Francisco, CA 94108-2693 | DATE AND TIME<br>On or before 10:00 a.m. May 18, 2007 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | May 4, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Roman M. Silberfeld (RMSilberfeld@rkmc.com)
2049 Century Park East, Ste. 3700, Los Angeles, CA 90067; (310) 552-0130

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

1 If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
|  |  |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| DATE | SIGNATURE OF SERVER |
|---|---|
|  |  |
|  | ADDRESS OF SERVER |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Firmwide:82071867.1 051329.1001

**EXHIBIT A**

1.      All correspondence, including e-mail correspondence, with co-authors or third parties, including but not limited to editors of professional journals, with respect to the articles and papers listed in the attached Appendix, and any previous drafts of those articles and papers.

2.      All questionnaire or survey responses provided by the 708 companies, referenced at page 596 of your article, "Best Practices or Best Guesses?," *see* Entry No. 4 in the attached Appendix.

3.      All electronic databases containing questionnaire or survey responses provided by the 708 companies, referenced at page 596 of your article, "Best Practices or Best Guesses?," *see* Entry No. 4 in the attached Appendix.

4.      All referee reports and any correspondence regarding any of the articles and papers listed in the attached Appendix.

5.      All research papers and articles, including preliminary drafts, you have authored pertaining to corporate affirmative action, diversity policies, and equal employment opportunity.

6.      All databases you have created that relate to your research regarding corporate affirmative action, diversity policies, and equal employment opportunity.

7.      All correspondence, including e-mail correspondence, with other sociologists or professional journals, including referee reports, regarding any articles and papers you have written regarding corporate affirmative action, diversity policies, and equal employment opportunity.

8.      Electronic files and other records of all drafts and final versions of all experimental protocols, survey instruments, coding instruments, and/or questionnaires used in connection with the collection of data as reported in any of the articles and papers contained in the attached appendix.

9.      Electronic files and other records of all data, including raw and untransformed data and data omitted from research reports, gathered in connection with the articles and papers listed in the attached Appendix.

10.     Electronic files and other records of statistical analyses and any other data analyses conducted with respect to any data gathered in connection with the articles and papers listed in the attached Appendix.

11.     All documents, including electronic documents, relating to any grant proposal seeking funding for the study of affirmative action, diversity policies, or discrimination within organizational settings on which you are or have been an investigator, including drafts, final proposals, and all correspondence from grant foundations or agencies in connection with said proposals.

12.     Records of any communications, written or otherwise, with William Bielby and/or Barbara Reskin regarding any lawsuit or research pertaining to corporate affirmative action diversity policies, equal employment opportunity, or stereotyping discrimination.

13.     Records of any communications with any representative of the Equal Employment Opportunity Commission, or any state or local fair employment agency.

14.     Any depositions, transcripts, or reports containing or referencing your testimony, opinions, or analysis in any lawsuit regarding employment discrimination, stereotyping, testing, affirmative action, or diversity.

## APPENDIX

1.      Kalev, Alexandra and Yehouda Shenhav. "State, Management and the Labor Process: Regulative Means and Normative Framing in the Diffusion of Managerial Models." Administrative Science Quarterly (forthcoming).

2.      Kelly, Erin and Alexandra Kalev. 2006. "Managing Flexible Work Arrangements in U.S. Organizations: Formalized Discretion or 'A Right to Ask.'" Socio-Economic Review 4(3).

3.      Kalev, Alexandra and Frank Dobbin. 2006. "Enforcement of Civil Rights Law in Private Workplaces: Compliance Reviews and Lawsuits Before and After Reagan." Law and Social Inquiry 31(4).

4.      Kalev, Alexandra, Frank Dobbin and Erin Kelly. 2006. "Best Practices or Best Guesses? Assessing the Efficacy of Corporate Affirmative Action and Diversity Policies." American Sociological Review 71(4): 589-617.

5.      Kalev, Alexandra. "Cracking the Glass Cages? Work Teams, Cross Training and Management Diversity."

6.      Kalev, Alexandra. "How You Downsize is Who You Downsize: Legal Accountability and Women's and Minorities' Vulnerability to Layoffs."

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMEEN HOLLOWAY, ET AL.,<br>Plaintiffs<br><br>        V.<br><br>BEST BUY CO., INC. ,<br>Defendant. | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:[1]   3:05-cv-05056-PJH |

TO:   ALEXANDRA KALEV
        6527 Morris Avenue
        El Cerrito, CA 94530

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Morgan, Lewis & Bockius LLP<br>One Market, Spear Street Tower, San Francisco, CA 94105 | DATE AND TIME<br>7/26/2007 10:00 am |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

   SEE "EXHIBIT A" AND APPENDIX ATTACHED THERETO

| PLACE<br>   Morgan, Lewis & Bockius LLP<br>   One Market, Spear Street Tower, San Francisco, CA 94105 | DATE AND TIME<br>7/26/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 7/12/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

   Roman M. Silberfeld, 2049 Century Park East, Ste. 3700, Los Angeles, CA 90067; (310) 552-0130

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                   DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

1.      All correspondence, including e-mail correspondence, with co-authors or third parties, including but not limited to editors of professional journals, with respect to the articles and papers listed in the attached Appendix, and any previous drafts of those articles and papers.

2.      All questionnaire or survey responses provided by the 708 companies, referenced at page 596 of your article, "Best Practices or Best Guesses?," *see* Entry No. 4 in the attached Appendix.

3.      All electronic databases containing questionnaire or survey responses provided by the 708 companies, referenced at page 596 of your article, "Best Practices or Best Guesses?," *see* Entry No. 4 in the attached Appendix.

4.      All referee reports and any correspondence regarding any of the articles and papers listed in the attached Appendix.

5.      All research papers and articles, including preliminary drafts, you have authored pertaining to corporate affirmative action, diversity policies, and equal employment opportunity.

6.      All databases you have created that relate to your research regarding corporate affirmative action, diversity policies, and equal employment opportunity.

7.      All correspondence, including e-mail correspondence, with other sociologists or professional journals, including referee reports, regarding any articles and papers you have written regarding corporate affirmative action, diversity policies, and equal employment opportunity.

8.      Electronic files and other records of all drafts and final versions of all experimental protocols, survey instruments, coding instruments, and/or questionnaires used in connection with the collection of data as reported in any of the articles and papers contained in the attached appendix.

9.      Electronic files and other records of all data, including raw and untransformed data and data omitted from research reports, gathered in connection with the articles and papers listed in the attached Appendix.

10.     Electronic files and other records of statistical analyses and any other data analyses conducted with respect to any data gathered in connection with the articles and papers listed in the attached Appendix.

11.     All documents, including electronic documents, relating to any grant proposal seeking funding for the study of affirmative action, diversity policies, or discrimination within organizational settings on which you are or have been an investigator, including drafts, final proposals, and all correspondence from grant foundations or agencies in connection with said proposals.

12.     Records of any communications, written or otherwise, with William Bielby and/or Barbara Reskin regarding any lawsuit or research pertaining to corporate affirmative action diversity policies, equal employment opportunity, or stereotyping discrimination.

13.     Records of any communications with any representative of the Equal Employment Opportunity Commission, or any state or local fair employment agency.

14.     Any depositions, transcripts, or reports containing or referencing your testimony, opinions, or analysis in any lawsuit regarding employment discrimination, stereotyping, testing, affirmative action, or diversity.

## APPENDIX

1.     Kalev, Alexandra and Yehouda Shenhav. "State, Management and the Labor Process: Regulative Means and Normative Framing in the Diffusion of Managerial Models." Administrative Science Quarterly (forthcoming).

2.     Kelly, Erin and Alexandra Kalev. 2006. "Managing Flexible Work Arrangements in U.S. Organizations: Formalized Discretion or 'A Right to Ask.'" Socio-Economic Review 4(3).

3.     Kalev, Alexandra and Frank Dobbin. 2006. "Enforcement of Civil Rights Law in Private Workplaces: Compliance Reviews and Lawsuits Before and After Reagan." Law and Social Inquiry 31(4).

4.     Kalev, Alexandra, Frank Dobbin and Erin Kelly. 2006. "Best Practices or Best Guesses? Assessing the Efficacy of Corporate Affirmative Action and Diversity Policies." American Sociological Review 71(4): 589-617.

5.     Kalev, Alexandra. "Cracking the Glass Cages? Work Teams, Cross Training and Management Diversity."

6.     Kalev, Alexandra. "How You Downsize is Who You Downsize: Legal Accountability and Women's and Minorities' Vulnerability to Layoffs."

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
OFFICE OF THE GENERAL COUNSEL



1111 Franklin Street, 8th Floor • Oakland, California 94607-5200 • (510) 987-9800 • FAX (510) 987-9757

Charles F. Robinson
VICE PRESIDENT AND GENERAL COUNSEL

Writer's direct line:  (510) 987-9739
E-mail:  christopher.patti@ucop.edu

May 14, 2007

**VIA ELECTRONIC MAIL (RMSILBERFELD@RKMC.COM) & U.S. MAIL**

Roman M. Silberfeld
Littler, Mendelson, PC
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

Re:   Holloway v. Best Buy Co.--Subpoena to Alexandra Kalev

OBJECTION OF ALEXANDRA KALEV PURSUANT TO
RULE 45 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Dear Mr. Silberfeld:

I represent Alexandra Kalev with respect to the subpoena you have served in *Holloway et al. v. Best Buy Co.* (N.D.Cal. No. 3:05-ev-05056-PJH).  Pursuant to Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), Professor Kalev objects to the subpoena as follows:

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that it calls for the production of documents protected by the attorney-client privilege and/or the attorney work-product doctrine.

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that it is overbroad, unduly burdensome, and/or not reasonably calculated to lead to the discovery of admissible evidence.

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that it seeks disclosure of opinion and information from an unretained expert in violation of FRCP 45(c)(3)(B)(ii).

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that it requires disclosure of confidential and/or proprietary research information, analysis, opinions,

Roman M. Silberfeld
May 14, 2007
Page 2

materials, sources and communications in violation of FRCP 45(c)(3)(B)(i) or the First
Amendment of the United States Constitution.

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that
it is harassing, retaliatory, or would otherwise chill Professor Kalev and others in their exercise
of freedoms of speech and/or association under the First Amendment of the United States
Constitution.

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that
it seeks disclosure of confidential and proprietary information of third parties obtained from the
United States Government under an agreement of confidentiality.

Professor Kalev objects to each category set forth in Exhibit A to the Subpoena to the extent that
it fails to provide reasonably specific identification of the materials and documents sought.

In addition Professor Kalev states that she is in possession of no materials responsive to requests
number 12 or 14 in Exhibit A to the subpoena.

Sincerely,

Christopher M. Patti
University Counsel

CMP/lj

cc.   A. Kalev

160737.1

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
OFFICE OF THE GENERAL COUNSEL



1111 Franklin Street, 8th Floor • Oakland, California 94607-5200 • (510) 987-9800 • FAX (510) 987-9757

Charles F. Robinson
VICE PRESIDENT AND GENERAL COUNSEL

Writer's direct line: (510) 987-9739
E-mail: christopher.patti@ucop.edu

May 16, 2007

**VIA ELECTRONIC MAIL (RMSILBERFELD@RKMC.COM) & U.S. MAIL**

Roman M. Silberfeld
Littler, Mendelson, PC
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

Re:     Holloway v. Best Buy Co.--Subpoena to Alexandra Kalev

SUPPLEMENTAL OBJECTION OF ALEXANDRA KALEV PURSUANT TO
RULE 45 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Dear Mr. Silberfeld:

This supplements the objections of Alexandra Kalev set forth in my May 14, 2007, letter to you.
Professor Kalev also objects to each category set forth in Exhibit A to the Subpoena to the extent
that it calls for the production of documents protected from disclosure by federal statutes or
regulations, including, but not limited to 42 U.S.C. §§ 2000e-5 and 2000e-8.

Sincerely,

Christopher M. Patti
University Counsel

CMP/lj

cc.     A. Kalev

160831.1

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA          )
                                                   ) ss.
COUNTY OF LOS ANGELES   )

3

4

5

        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3700, Los Angeles, California  90067-3211.

6

7

        On July 24, 2007, I served the foregoing document described as **JOINT LETTER BRIEF REGARDING SUBPOENAS SERVED UPON DR. ALEXANDRA KALEV** on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

8

9

10

Christopher M. Patti, Esq.
The Regents of the University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200

Camilla Louisa Roberson, Esq.
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

11

12

13

14

**[X]    BY MAIL:** I caused such envelope to be deposited in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

15

16

17

        I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18

19

**[]     BY FEDERAL EXPRESS - OVERNIGHT:** I caused such envelope to be deposited in a box or other facility regularly maintained by Federal Express in an envelope or package designated by Federal Express with delivery fees paid.

20

21

**[]     BY FACSIMILE:** I served a true copy of the document(s) described on all parties to this action by facsimile transmission, and the transmission was reported as complete and without error.  Facsimile transmissions were sent and addressed as stated above.

22

23

**[]     BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressees.

24

**[X]    (Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

25

        Executed on July 24, 2007 at Los Angeles, California.

26

27

                                                    Silvia Green

28

ROBINS, KAPLAN,
MILLER & CIRESI
L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

LA1 60138444.1

PROOF OF SERVICE