1 | Roman M. Silberfeld, RMSilberfeld@rkmc.com (#62783)
Lisa L. Heller, LLHeller@rkmc.com (#126086)
2 | David Martinez, DMartinez@rkmc.com (#193183)
Benjamin M. Weiss, BMWeiss@rkmc.com (#223163)
3 | Rebecka M. Biejo, RMBiejo@rkmc.com (#240504)
Vincent S. Loh, VSLoh@rkmc.com (#238410)
4 | **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3700
5 | Los Angeles, CA 90067-3211
Telephone: (310) 552-0130
6 | Facsimile: (310) 229-5800

7 | George A. Stohner, GStohner@morganlewis.com (#214508)
Melinda S. Riechert, MRiechert@morganlewis.com (#65504)
8 | **MORGAN, LEWIS & BOCKIUS LLP**
300 South Grand Avenue, Twenty-Second Floor
9 | Los Angeles, CA 90071-3132
Telephone: (213) 612-2500
10 | Facsimile: (213) 612-2501

11 | Attorneys for Defendants,
BEST BUY CO., INC. and
12 | BEST BUY STORES, L.P.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JASMEN HOLLOWAY, AMY GARCIA, CHERYL CHAPPEL, ERIC BLACKSHER, JESSICA TREAS, LAWRENCE SANTIAGO, JR., MUEMBO MUANZA, MAURICE CALHOUN, NICHOLAS DIXON and SUSAN MYERS-SNYDER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BEST BUY CO., INC., and BEST BUY STORES, L.P.<br><br>Defendants. | Case No. C 05-05056 PJH (MEJ)<br><br>**DEFENDANT BEST BUY CO., INC.'S OBJECTIONS TO JULY 26, 2007 ORDER OF MAGISTRATE JUDGE** |

27 | / / /

28 | / / /

## INTRODUCTION AND BACKGROUND

On May 4, 2007 and July 12, 2007, Defendant Best Buy Stores L.P. ("Best Buy") properly served subpoenas *duces tecum* on Dr. Alexandra Kalev ("Kalev"), a social science researcher at the University of California – Berkeley, to obtain certain documents and data, and to take a deposition, regarding her gender and racial stereotyping and unconscious bias research, central themes of Plaintiffs' Complaint in this case. In response to Best Buy's subpoenas, Dr. Kalev took the position that Best Buy was not entitled to "any discovery" from her and refused to produce any of the subpoenaed documents or data, or to appear for her duly-noticed deposition. Dr. Kalev opposed the subpoenas in whole despite Best Buy's agreement to significantly narrow the scope of the subpoenas and its offer to protect the confidentiality of information sought and to compensate her for time spent gathering documents and appearing for deposition.

On July 24, 2007, pursuant to U.S. Magistrate Judge James's Standing Order Regarding Discovery and Dispute Procedures, Dr. Kalev moved to quash Best Buy's subpoenas and Best Buy simultaneously moved to compel Dr. Kalev to produce responsive documents and data, and to appear for her deposition. Among other things, Dr. Kalev argued that Best Buy's subpoenas were premature because the parties in this case have not yet designated their experts and, as such, it was not clear that one of Plaintiffs' experts might rely on Dr. Kalev's research. On July 26, 2007, Magistrate Judge James issued an order denying Best Buy's request to compel Dr. Kalev to comply with its subpoenas "[b]ecause there is no indication that Plaintiffs intend to use Dr. Kalev's testimony or research."

Pursuant to FED. R. CIV. P. 72(a), Best Buy hereby objects to the July 26, 2007 Order on the grounds that (a) Plaintiffs' Complaint itself places Dr. Kalev's research squarely at issue in this case and, therefore, Best Buy requires this discovery now in order to properly defend itself and (b) though the Order does not preclude the discovery sought at a later date, the practical effect of the Order will be to deprive Best Buy of a reasonable opportunity to challenge, within the time allotted by the current Case Management Order, the social science "expert" testimony Plaintiffs will offer in support of their class certification motion.

///

## STANDARD OF REVIEW

A District Judge reviewing a Magistrate Judge's order on a discovery-related issue shall set aside any portion of that order found to be "clearly erroneous or contrary to law." *See, e.g., Morales v. Tilton*, 2006 WL 2724152, at *1 (N.D. Cal. Sept. 22, 2006); *Google v. Amer. Blind & Wallpaper Factory, Inc.*, 2006 WL 3050866, at *1 (N.D. Cal. Oct. 23, 2006).

## OBJECTIONS AND ARGUMENT

### I.

### THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS BECAUSE PLAINTIFFS' COMPLAINT PLACES DR. KALEV'S SOCIAL SCIENCE RESEARCH SQUARELY AT ISSUE IN THIS CASE

In December 2005, Plaintiffs filed their class action Complaint against Best Buy, alleging nationwide gender and race discrimination in nearly all of Best Buy's employment decisions, including hiring, compensation and promotions. Indeed, one of the central themes of Plaintiffs' case is that employment-related decisions at Best Buy are based on "subjective" criteria, and therefore are susceptible to implicit prejudice and unconscious bias, and that Best Buy's employment policies and decision-making procedures are "tainted by gender and racial stereotyping and unconscious bias." For example, Plaintiffs allege that:

> 37. Best Buy implements its discriminatory employment policies and practices in part through an overly discretionary hiring, promotions, and compensation review process. Best Buy fails to publish explicit guidelines and qualifications for managers attempting to hire and promote employees, and **instead allows managers to rely on subjective, arbitrary, standardless, and unvalidated criteria in making employment decisions** which focus on whether employees reflect managers' perceptions of what Best Buy employees should be rather than whether they would be responsible, effective employees who could perform their jobs well.
>
> 38. Best Buy's corporate culture of race and gender stereotypes **encourages managers to rely upon racial and gender stereotypes** in making employment decisions.
>
> 40. Best Buy generally does not advertise job openings to the public. When individuals are interviewed for job openings, they often are not informed of specific jobs, **but are assigned to positions that managers believe would be a good "fit" on a subjective basis, tainted by gender and racial stereotyping and unconscious bias.**

> 43. . . .**when considering applicants, managers' subjective determinations are tainted by gender and racial stereotyping and unconscious bias.**
>
> 44. Best Buy also implements its discriminatory pay policies and practices in part through **subjective, arbitrary, and standardless pay determinations**. . . . Wages are also adjusted based on evaluations, which are largely based upon Best Buy mangers' **subjective judgments of performance.**
>
> 124. There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether Best Buy's policies or practices discriminate against minority and female employees and applicants; **(2) whether Best Buy's use of subjective selection criteria as an employment policy or practice discriminates against minority and female applicants and employees . . . .**
>
> 132. Best Buy's employment practices and policies, which are overly subjective, discretionary, standardless, and arbitrary, have an adverse disparate impact on minority applicants and employees. . .
>
> 144. Best Buy's employment practices and policies, which are overly subjective, discretionary, standardless, and arbitrary, have an adverse disparate impact on minority applicants and employees. . .
>
> 151. Best Buy's standard employment practices and policies, which are overly subjective, standardless, and arbitrary, have an adverse disparate impact on female applicants and employees.

*See* First Am. Compl. ¶¶ 37, 38, 40, 43, 44, 124, 132, 144, 151 (emphasis added).

Thus, according to Plaintiffs, when individuals at Best Buy are permitted to make employment related decisions based upon subjective criteria, they base those decisions on stereotypes and their own unconscious biases. Given the nature of these allegations, Best Buy is entitled to not only refute Plaintiffs' claims, but also to investigate and challenge the alleged scientific basis for their implicit prejudice/unconscious bias theories. Best Buy did not seek third-party discovery of Dr. Kalev's research blindly – rather, her research on such issues has been relied upon by social science "experts" that have been retained to testify in other cases involving strikingly similar claims to those asserted here, by the Plaintiffs' counsel in this case. Social science experts who advance stereotyping, unconscious bias and implicit prejudice theories in support of motions for class certification in cases like the instant one typically do not rely on their

own research, but instead rely on the research of other social scientists such as Dr. Kalev, to support their opinions. In fact, Dr. Kalev is critical because she is one of the few researchers who has attempted to connect stereotyping, implicit prejudice and unconscious bias theories to workplace decisions. Plaintiffs have thus placed Dr. Kalev's research, and the issues on which it focuses, squarely at issue in this case.

The very lawyers who represent Plaintiffs have regularly filed large-scale class action cases against national corporations raising allegations that are strikingly similar to those in the First Amended Complaint. Plaintiffs' counsel also routinely utilize experts relying on theories of implicit prejudice/unconscious bias. For example, Plaintiffs' counsel currently represents a class of current and former African-American and Latino employees of FedEx Express alleging racial discrimination in promotions, compensation, performance evaluation and discipline. That lawsuit, captioned *Satchell, et. al. v. FedEx Express*, Case Nos. 03-2659-SI; 03-2878-SI, was filed in 2003 in this District Court. The *FedEx Express* Complaint contains allegations nearly identical to those in this case.[1] Plaintiffs' counsel retained Dr. William T. Bielby to present expert testimony on issues of stereotyping and the role of purported implicit bias in FedEx Express' decision-making. Further, it is Best Buy's understanding that Dr. Bielby relied on Dr. Kalev's research in that case.

In *Ellis v. Costco Wholesale Corporation*, Case No. 3:04-CV-03341-MHP, a case currently pending before this District Court, Plaintiffs' counsel represents a class of female current and former Costco employees who allege that they were discriminated against in promotion and management practices. Plaintiffs' Complaint again makes nearly identical allegations to those in this case.[2] Plaintiffs' counsel again offered the "expert" testimony of a

---

[1] For example, Plaintiffs allege that FedEx Express' policies to govern promotions, compensation and discipline *"involve uncontrolled subjective criteria and/or are applied by Defendant in an arbitrary and capricious manner. As a result, racial biases and stereotypes enter into Defendant's employment decisions."* See Third Consol. Am. Compl., *Satchell, et. al. v. FedEx Express*, Case Nos. 03-2659-SI; 03-2878-SI, Dkt. No. 491-3 ¶ 34 (emphasis added). The *FedEx Express* Plaintiffs further allege that the company relied upon "unweighted, arbitrary and subjective criteria" and on "racial stereotypes" in making its employment decisions. *Id.* at ¶¶ 32(b); 32(c).

[2] *See* Second Am. Compl., *Ellis v. Costco Wholesale Corporation*, Case No. 3:04-CV-03341-MHP, Dkt. No. 83, ¶ 25 ("promotion into Costco's most lucrative warehouse level positions *is based entirely on subjective judgments, which are often infected with conscious or unconscious prejudices and gender-based stereotypes.* . . ."). In support of their motion for class certification in the *Costco* case, Plaintiffs relied upon a "common culture of gender stereotyping and paternalism" that allegedly existed at Costco and further claimed that Costco's allegedly informal

social scientist to support these theories. As recognized by the *Costco* Court in its Order regarding class certification, Plaintiffs' expert, Dr. Barbara Reskin, relied upon "social science *research* on cognitive bias" to connect her findings to Costco's specific policies. *Id.* (emphasis added).[3]

The claims made and the social science theories relied upon in *FedEx Express, Costco* and *Home Depot* are nearly identical to those posited by Plaintiffs in this case. Plaintiffs will likely rely upon the same social science expert testimony that their counsel has utilized in nearly every similar case. In turn, those experts have relied, and will no doubt continue to rely upon social science research, including Dr. Kalev's, to support their claims and theories.[4] Given the prominent role expert social science testimony has played in class certification decisions in the aforementioned cases and others like them in this district, Best Buy must obtain the discovery it now seeks. *See, e.g., Dukes v. Wal-Mart*, 222 F.R.D. 137, 153-54 (N.D. Cal. 2004).

Why is it critical to perform this discovery? Because, as noted above, such social science "experts" typically do not rely on their own research, but instead rely on the research of other social scientists like Dr. Kalev. Reliance on the secondary research does not, however, relieve testifying social science experts of the requirement, under Fed. R. Evid 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), that, among other things, the testimony offered be scientifically reliable and valid, and is testable and has been tested. In order to assess and, if

---

and excessively subjective policy for promotions was vulnerable to bias. *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 639 (N.D. Cal. 2007).

[3] This is a long held approach by this counsel. In 1994, Plaintiffs' counsel filed a Complaint against The Home Depot on behalf of a class of female employees and applicants, alleging gender discrimination in nearly all aspects of Home Depot's employment decision-making, including hiring, training, promotions and compensation. *See Butler v. The Home Depot*, 984 F. Supp. 1287 (N.D. Cal. 1997). Plaintiffs retained Dr. Bielby as their designated expert in the fields of sociology, social psychology and organizational behavior to testify as to Plaintiffs' allegations that Home Depot's arbitrary and subjective criteria for employment decision-making allowed gender stereotyping and implicit biases to play a role in such decisions.

[4] The notion that Plaintiffs will seek to offer such "expert" social science testimony in this case as well is supported by Plaintiffs' curious (and telling) silence to date on the issue of the subpoenas directed to Dr. Kalev. Although Plaintiffs' counsel insisted on participating in this discovery dispute, and attended the meet and confer conference, they have yet to disclaim any intention to rely on social science "expert" testimony or their experts' intention to rely on Dr. Kalev's research. In fact, in its submission to the Magistrate Judge, Best Buy expressly offered to withdraw the subpoenas issued to Dr. Kalev should Plaintiffs represent that they do not intend to offer the testimony of a social scientist in this case to support the stereotyping, unconscious bias, implicit prejudice and excessive subjectivity-related allegations of their Complaint. That offer still stands.

appropriate, challenge the scientific reliability and validity of the opinions expressed by Plaintiffs' social science experts, Best Buy must first be afforded the opportunity to undertake discovery into the factual and scientific underpinnings of the research conducted by those researchers upon whom social science experts rely. Dr. Kalev is undoubtedly one such researcher. If, by operation of the Magistrate Judge's Order, Best Buy is precluded from undertaking this critical discovery now, a cornerstone of Plaintiffs' case will be inappropriately insulated from the rigorous challenge that is critical to Best Buy's ability to oppose class certification. Best Buy and its expert(s) will be wholly unable to test the foundations of the research relied upon, and, in turn, Plaintiffs' testifying social science expert will be permitted to hide behind the research of Dr. Kalev and others knowing that its scientific foundations lie beyond Best Buy's reach. This result will severely prejudice Best Buy in terms of its ability to defend itself against Plaintiffs' claims at class certification.

In sum, the Order of the Magistrate Judge was erroneous in denying Best Buy's request to require Dr. Kalev to comply with its subpoenas based on the conclusion that there is no indication that Plaintiffs would rely on Dr. Kalev's research. Rather, it is a foregone conclusion that Plaintiffs, as their counsel has done in nearly every similar case over more than a decade, will later seek to rely upon the "expert" testimony of a social scientist who, in turn, will expressly rely on the research of social scientists like Dr. Kalev to support their opinions. *See In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass. 2006) (permitting inquiry into the factual underpinnings of assertions made in a non-party author's work where the author's work addressed a topic at issue in the litigation).

## II.

**THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS BECAUSE DEFERRING DISCOVERY OF DR. KALEV UNTIL PLAINTIFFS EXPRESSLY REVEAL AN INTENT TO RELY ON HER RESEARCH WILL PRECLUDE BEST BUY FROM OBTAINING THE DISCOVERY IT SEEKS**

As noted above, the Magistrate Judge's Order neither quashes Best Buy's subpoenas nor precludes Best Buy from obtaining the discovery it seeks should Plaintiffs reveal that they and/or their experts intend to rely on Dr. Kalev's research. However, given the current Case

1 Management Order governing expert discovery in this case, the practical effect of the Magistrate
2 Judge's Order will be to preclude Best Buy from effectively undertaking the discovery to which it
3 is entitled. Best Buy does not anticipate that Dr. Kalev herself will be an expert in this case.
4 Rather, it expects that her research will bear materially upon the testimony of the social science
5 "expert" Plaintiffs retain to offer testimony in support of their motion for class certification on
6 issues relating to alleged stereotyping, unconscious bias, implicit prejudice and alleged excessive
7 subjectivity in decision-making.

8 Yet, if Best Buy must wait to receive the report of Plaintiffs' testifying social science
9 expert before it can begin to evaluate the research of Dr. Kalev (and numerous others upon whose
10 research Plaintiffs' expert relies), Best Buy will be limited by the Case Management Order to a
11 period of only 60 days in which to: (1) address the objections to third-party discovery that
12 Plaintiffs, Dr. Kalev and other researchers are bound to raise at that juncture; (2) brief and obtain
13 rulings on those objections; (3) secure documents, data and testimony from Dr. Kalev or other
14 researchers relied upon; (4) provide that data to its own expert(s), and allow its expert(s) time to
15 evaluate that evidence and incorporate their findings into Best Buy's own expert report. Given
16 the time that will be consumed by these tasks, the Magistrate Judge's Order, when viewed in
17 conjunction with the Case Management Order, ensures that Best Buy will be significantly
18 prejudiced in confronting Plaintiffs' expert evidence.

19 As the Advisory Committee to the Federal Rules of Civil Procedure observed, the
20 deposition of the testifying expert is deferred until after that expert provides a written report in the
21 expectation that the report itself may eliminate or reduce the time required for the deposition. *See*
22 Fed. R. Civ. P. 26(a)(2) advisory committee's note (1993). Because Dr. Kalev will not be a
23 testifying expert, the record of her research already is complete and no interest is served by
24 delaying discovery with respect to her data and methods. The very same questions and objections
25 that will be raised if her deposition goes forward now will be raised if discovery from her is
26 delayed until after Best Buy receives Plaintiffs' expert report. The same is true of other
27 researchers upon whose work Plaintiffs' and/or their experts ultimately rely. The difference is
28 that now the parties and the Court have the luxury of time in which to carefully consider her

1 testimony and documentary evidence, brief any objections, and digest her findings, whereas in the
2 60-day window provided by the Case Management Order, these necessary tasks will prove
3 impossible for Best Buy to undertake.

## CONCLUSION

Thus, for the foregoing reasons, Best Buy respectfully requests that this Court sustain Best Buy's objections to the Magistrate Judge's Order and order Dr. Kalev to comply with Best Buy's subpoenas.

DATED:  August 9, 2007                              **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:   /S/ Roman M. Silberfeld
        Roman M. Silberfeld

Attorneys for Defendants, BEST BUY CO., INC. and BEST BUY STORES, L.P.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW

LA1 60148410.1    - 9 -    DEFENDANT BEST BUY CO., INC.'S OBJECTIONS TO JULY 26, 2007 ORDER OF MAGISTRATE JUDGE
CASE NO. C-05-5056 PJH (MEJ)

# PROOF OF SERVICE

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208.

On August 9, 2007, I served the foregoing document described as **DEFENDANT BEST BUY CO., INC.'S OBJECTIONS TO JULY 26, 2007 ORDER OF MAGISTRATE JUDGE** on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Christopher M. Patti, Esq.
The Regents of the University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
E-mail: Christopher.Patti@ucop.edu

Camilla Louisa Roberson, Esq.
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
E-mail: Croberson@schneiderwallace.com

James G. Allison, Senior Attorney
Office of Legal Counsel
Equal Employment Opportunity Commission
1801 L Street, N.W.
Washington, DC 20507
E-mail: James.Allison@eeoc.gov

[X] **BY MAIL:** I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] **BY ELECTRONIC MAIL**: I caused a true copy of the document described to be served by electronic mail to the addressee above.

[] **BY FEDERAL EXPRESS - OVERNIGHT:** I caused such envelope to be deposited in a box or other facility regularly maintained by Federal Express in an envelope or package designated by Federal Express with delivery fees paid.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on August 9, 2007 at Los Angeles, California.

Silvia Green

LA1 60138444.1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

PROOF OF SERVICE