UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASMEN HOLLOWAY, et al.,

    Plaintiffs

    v.

BEST BUY CO., INC., et al.,

    Defendants.
_____/

No. C 05-5056 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

    Defendants' motion for judgment on the pleadings came on for hearing before this court on April 29, 2009. Plaintiffs appeared by their counsel Bill Lann Lee, Eve H. Cervantez, Kelly M. Dermody, and Lindsay Nako, and defendants appeared by their counsel George A. Stohner, Roman M. Silberfeld, and Paul C. Evans. Having read the parties' papers, and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

## BACKGROUND

    This is an employment discrimination case, filed as a proposed class action, against defendants Best Buy Co., Inc. and Best Buy Stores, L.P. ("Best Buy"). Plaintiffs allege that Best Buy discriminates against women and minorities on the basis of gender, race, color, and/or national origin with respect to recruiting, hiring, job assignments, transfers, promotions, and exempt compensation.

On January 8, 2009, plaintiffs filed a third amended complaint ("TAC"). Plaintiffs allege that Best Buy "operates through a corporate culture of racial and gender stereotypes," and that the alleged discrimination is the result of a general "policy or practice" of systematic discrimination against women and minorities in favor of white males.

Plaintiffs assert that Best Buy discriminates against African-American job applicants by refusing to hire them for entry-level positions, or, when it does hire African-Americans, discriminates against them with respect to job assignments, promotions/transfers, and exempt compensation. Plaintiffs allege that Best Buy similarly discriminates against its Latino employees with respect to job assignments and promotions/transfers, and discriminates against its female employees with respect to job assignments, promotions/transfers, and exempt compensation.

The TAC asserts five claims for relief: (1) discrimination on the basis of race, color, and/or national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; (2) discrimination on the basis of race, color, and/or national origin, in violation of 42 U.S.C. § 1981; (3) discrimination on the basis of race, color, and/or national origin, in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, et seq.; (4) discrimination on the basis of gender, in violation of Title VII; and (5) discrimination on the basis of gender, in violation of FEHA. Plaintiffs seek back pay and front pay, punitive damages and injunctive relief.

The court interprets the TAC as alleging disparate treatment. A plaintiff may establish a violation of Title VII by proving disparate treatment, disparate impact, or the existence of a hostile work environment. See, e.g., Sischo-Nownejad v. Merced Comm. Coll. Dist., 934 F.2d 1104, 1109 (9th Cir. 1991). A plaintiff alleging disparate treatment must demonstrate intentional discrimination. She must show that the employer intentionally treats some people less favorably than others because of their race, color, religion, sex, or national origin. International Bhd of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); see also Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 n.20 (2000) ("disparate treatment is intentional discrimination against one or more persons on prohibited

grounds").[1]

Although disparate treatment cases typically arise in individual claims, plaintiffs in class actions may use the disparate treatment analysis, alleging that the employer's conduct is part of a "pattern or practice" of general discriminatory treatment towards members of a particular class. See International Bhd of Teamsters, 431 U.S. at 325. To succeed on a pattern-or-practice claim, plaintiffs must establish that intentional discrimination was the defendant's "standard operating procedure." Id. at 336.

Best Buy now seeks partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). Specifically, Best Buy seeks judgment on plaintiffs' class claims alleging discriminatory job assignments upon hiring, in violation of Title VII and FEHA.

**DISCUSSION**

A.   Legal Standard

Under Federal Rule of Civil Procedure Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. Westlands Water Dist. v. Bureau of Reclamation, 805 F.Supp. 1503, 1506 (E.D. Cal. 1992). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

---

[1] By contrast, a disparate impact claim does not require proof of discriminatory intent. Instead, it attacks employment practices that are "fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971); see also International Bhd. of Teamsters, 431 U.S. at 335 n.15 (claims of disparate impact "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity").

It is true that plaintiffs allege in the TAC that "Best Buy's standard employment policies or practices have a disparate impact" on African-American applicants and employees and on female and minority employees. TAC ¶ 25. However, the facts as pled appear to support only a claim of disparate treatment.

3

The legal standard applied to a motion for judgment on the pleadings is the same as the legal standard applied on a motion to dismiss pursuant to Rule 12(b)(6).  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1989); Quest Communications Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

However, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, __ S.Ct. __, 2009 WL 1361536 at *13 (9th Cir., May 18, 2009).

In deciding a motion for judgment on the pleadings, the court must take "all material allegations of the non-moving party as contained in the pleadings as true, and constr[ue] the pleadings in the light most favorable to th[at] party." Doyle v. Raley's, Inc., 158 F.3d 1012, 1014 (9th Cir. 1998).  Review is limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

B.  The Parties' Arguments

Best Buy seeks judgment on the claims of discrimination in initial job assignments alleged in the first, third, fourth, and fifth causes of action.  Best Buy contends that partial judgment is warranted because none of the named plaintiffs filed an administrative complaint within 300 days (for Title VII) or 365 days (for FEHA) from the time they were

4

hired. Best Buy argues that plaintiffs therefore lack standing to assert those claims.

Best Buy also asserts that the only "job assignment" at issue in this case is that which occurs upon hire, as the only "job assignment" decision at Best Buy occurs when an individual is hired into a specific position. Plaintiffs claim, however, that the "job assignment" claims in the TAC encompass both the initial job assignment and subsequent decisions regarding job assignments.

According to plaintiffs, the TAC alleges that Best Buy gave plaintiffs (except Eric Blacksher, who was never hired by Best Buy) unfavorable job assignments throughout their tenure at Best Buy, and that Best Buy does not, and cannot, contend that plaintiffs lack standing to assert those claims. Plaintiffs appear to be arguing that their "initial assignment" claims are timely under a continuing violation theory, because the discrimination in initial job assignments was part of a continuous "pattern or practice" of discrimination, and that they can challenge such assignments even where the assignments fell outside the Title VII and FEHA limitations periods.

Plaintiffs also argue that Best Buy's motion is improper because, even if granted, it would not dispose entirely of any cause of action pled by plaintiffs. Plaintiffs assert that the TAC pleads valid and timely § 1981 claims for both initial[2] and later job assignments, and valid and timely Title VII and FEHA claims for later job assignments. Plaintiffs maintain that Best Buy's motion should be denied for this reason alone.

Alternatively, plaintiffs request leave to amend the complaint to substitute plaintiffs with timely initial job assignment claims under Title VII and FEHA for the present named plaintiffs with initial job assignment claims.

---

[2] Although Best Buy does not presently seek judgment as to the second cause of action for discrimination in violation of 42 U.S.C. § 1981, the court notes that the statute of limitations for a claim of discrimination in hiring under § 1981 is two years from the accrual of the injury. See Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008); see also Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 380-83 (2004). The complaint in this action was filed on December 8, 2005. As the initial job assignment is related to the hiring process, plaintiffs may have stated an "initial assignment" claim under § 1981 as to plaintiff Muembo Muanza, who was hired in September 2004. All other named class members (with the exception of Eric Blackshear, who was not hired) were hired more than two years before the present action was filed (according to the allegations in the TAC).

5

C. Analysis

    1.    Whether Best Buy's motion is procedurally proper

As an initial matter, the court considers whether judgment on the pleadings is proper on something less than an entire cause of action. Rule 12(c) neither expressly provides for partial judgment on the pleadings, nor bars such a procedure. See Strigliabotti v. Franklin Resources, Inc., 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005) (noting that it is common to apply Rule 12(c) where a moving defendant seeks judgment on the pleadings with respect to individual causes of action); Savage v. Council on American-Islamic Relations, Inc., 2008 WL 2951281 at *2 (N.D. Cal. 2008) (noting that it is the practice of many judges to permit partial judgment on the pleadings – e.g., on the first claim for relief, or the third affirmative defense); see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial, § 9:340 (2008).

The United States Supreme Court, while not ruling on the issue, did give tacit approval to a motion for partial judgment on the pleadings in a § 1983 case when it did not take issue with a partial judgment on the pleadings motion granted by a lower court. See City of Los Angeles v. Lyons, 461 U.S. 95, 98-99 (1983).

As to whether a Rule 12(c) motion can be used as a means to parse claims for relief or strike less than an entire count, the case law is not extensive. At least one court has held that "[p]artial judgment on the pleadings is not possible in federal pleading unless it disposes entirely of one or more counts of the complaint." In re Amica, Inc., 130 B.R. 792, 796 (Bankr. N.D. Ill. 1991). In reaching this conclusion, the court noted the similarity between Rule 12(c) and Rule 56 and the fact that many courts reject the granting of partial summary judgment on one claim. Id. Other courts, however, have rejected this conclusion. See, e.g., Chi-Mil Corp. v. W.T. Grant Co., 70 F.R.D. 352, 357 (E.D. Wis. 1976) ("judgment on the pleadings with respect to a part of a claim is implied by the parallel provision for partial summary judgment under Rule 56").

In this judicial district, district judges routinely issue orders granting in part and denying in part motions for judgment on the pleadings. See, e.g., Nahas v. City of

Mountain View, 2005 WL 1683617 (N.D. Cal., July 19, 2005); Carmen v. San Francisco Unified Sch. Dist., 982 F.Supp. 1396 (N.D. Cal. 1997). A motion for judgment on the pleadings is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially-noticed facts. See 5C Wright & Miller, Federal Practice and Procedure Civil 3d § 1367 at 206-07 & nn.4-5 (2004) (citing cases).

In light of the purpose of Rule 12(c) motions, as stated above, and given that each cause of action in the TAC alleges what could be construed as several separate claims, the court finds no reason not to consider Best Buy's motion for judgment on the pleadings as to less than entire causes of action.

2. Whether the named plaintiffs can represent the class on the issue of initial job assignments under Title VII and FEHA

Under both Title VII and FEHA, a plaintiff must exhaust administrative remedies before filing a civil action. Lyons v. England, 307 F.3d 1092, 1103-04 (9th Cir. 2002); Okoli v. Lockheed Technical Operations Co., 36 Cal. App. 4th 1607, 1613 (1995). Under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the alleged unlawful employment practice occurred.[3] Under FEHA, a plaintiff must file a charge with the California Department of Fair Employment and Housing ("DFEH") within one year after the unlawful practice occurred. Cal. Gov't Code § 12960(d).

Here, named plaintiff Eric Blacksher was never hired, and therefore has no "initial job assignment" claim. Of the remaining named plaintiffs, all eight filed their administrative charges more than one year after beginning their employment at Best Buy. Jasmen Holloway began working at Best Buy in January 2001, and filed her administrative charge

---

[3] The 300-day limitation applies where a claimant "initially institute[s] proceedings with a State or local agency with authority to grant or seek relief from [an unlawful employment] practice." 42 U.S.C. § 2000e-5(e)(1). Otherwise, the administrative charge must be filed within 180 days of the alleged unlawful practice. Id. The TAC alleges that on a given date, each of the nine named plaintiffs filed a charge of discrimination with the EEOC, and that each charge was then "cross-filed with the California Department of Fair Employment and Housing."

1  in December 2005.  Amy Garcia began working at Best Buy in August 2001, and filed her
2  administrative charge in October 2005.  Cheryl Chappel began working in July 2001, and
3  filed her first administrative charge in April 2005.  Jessica Treas began working at Best Buy
4  in July 1999, and filed her administrative charge in September 2006.  Lawrence Santiago,
5  Jr. began working at Best Buy in July 2003, and filed his administrative charge in
6  September 2006.  Muembo Muanza started working at Best Buy in September 2004, and
7  filed his administrative charge in December 2005.  Maurice Calhoun began working at Best
8  Buy in October 2003, and filed his administrative charge in December 2005.  Nicholas
9  Dixon began working at Best Buy in October 2003, and filed his administrative charge in
10 November 2005.

11       Because it is clear that plaintiffs' administrative charges were all filed outside the
12 respective limitation periods with respect to initial job assignments – i.e., more than 365
13 days after each plaintiff was hired – the issue becomes whether plaintiffs can represent the
14 class on the issue of initial job assignments under Title VII and FEHA.

15       As explained above, the TAC reflects that none of the named plaintiffs filed an
16 administrative charge within one year of the date that he or she began working at Best Buy.
17 For that reason, Best Buy asserts that it is entitled to judgment on the pleadings on the
18 "initial assignment" claims.  In addition, Best Buy contends that the decision in National
19 R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), precludes plaintiffs' "continuing
20 violations" theory.

21       In opposition, plaintiffs argue, first, that there is no "initial assignment" claim, and
22 assert that the phrase "initial job assignment" does not even appear in the TAC.  Yet
23 plaintiffs readily admit that they are challenging job assignments as discriminatory –
24 although they argue that those "assignments" encompass initial job assignments.  The
25 court finds, however, that the act of assigning a newly-hired individual a particular job is a
26 discrete act.  Such a discrete act triggers the time period in which the administrative charge
27 must be filed, see Morgan, 536 U.S. at 110-13, and plaintiffs who failed to file timely
28 administrative charges cannot challenge initial job assignments pursuant to Title VII and

FEHA.

As to whether plaintiffs have specifically alleged "initial assignment" claims, the court notes that the TAC distinguishes between "hiring" decisions on the one hand, and "transfers/promotions" on the other, as the allegations relating to some of the named plaintiffs clearly reference initial job assignments. See, e.g., TAC ¶ 47 ("[a]s it does with most women, Best Buy originally assigned Ms. Holloway to a cashier position, rather than to a sales position"); TAC ¶ 80 ("[d]espite her prior management experience and stated desire to work in sales, Best Buy initially assigned [Jessica] Treas to a CSR II position off the sales floor"); TAC ¶ 90 ("[d]espite his prior experience and stated desire to work as a supervisor, Best Buy initially assigned [Lawrence] Santiago to a CSR II position off the sales floor"); TAC ¶ 100 (after he was hired, and despite his prior electronics sales experience at The Good Guys, "Best Buy placed [Muembo] Muanza in a product process position in the warehouse").

Plaintiffs' second argument is that the text and legislative history of the Ledbetter Fair Pay Act confirms that plaintiffs may challenge job assignments that occur well after the initial job assignment, to the extent they affect compensation.

The Ledbetter Fair Pay Act was enacted in response to the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007). In that case, a female retiree sued under Title VII and the Equal Pay Act, alleging that adverse performance reviews motivated by sex discrimination earlier in her career had led her to receive lower pay than her male counterparts through to the end of her career, which spanned from 1979 to 1998. Id. 621. The Supreme Court granted cert on the question

> [w]hether and under what circumstances a plaintiff may bring an action under Title VII of the Civil Rights Act of 1964 alleging illegal pay discrimination when the disparate pay is received during the statutory limitations period, but is the result of intentionally discriminatory pay decisions that occurred outside the limitations period.

Id. at 623.

Based on the Morgan Court's holding that "unlawful employment practice" refers to "a discrete act or single 'occurrence,'" the Ledbetter Court first noted that "[t]he EEOC

9

1 charging period is triggered when a discrete unlawful practice takes place." The Court
2 explained that "[a] new violation does not occur, and a new charging period does not
3 commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse
4 effects resulting from past discrimination." Id. at 628. A "fresh violation" takes place only
5 when the employer engages in a new, intentionally discriminatory act. Id.

6 The Court rejected Ms. Ledbetter's attempt to characterize the allegedly
7 discriminatory employment practices as (1) the paychecks that were issued to her during
8 the EEOC charging period, and (2) the 1998 decision denying her a raise, which she
9 claimed carried forward intentionally discriminatory disparities from prior years." Id. at 624-
10 25.

11 The Court noted that Ms. Ledbetter had not asserted that the decisionmakers at
12 Goodyear acted with actual discriminatory intent either when they issued the checks during
13 the EEOC charging period, or when they denied her a pay raise in 1998. Rather, she had
14 argued that the paychecks were unlawful because they would have been larger if she had
15 been evaluated in a nondiscriminatory manner prior to the EEOC charging period; and that
16 the 1998 decision was unlawful because it "carried forward" the effects of prior, uncharged
17 discrimination decisions. Id.

18 Moreover, she had made no claim that intentionally discriminatory conduct occurred
19 during the charging period or that discriminatory decisions made prior to the charging
20 period were not communicated to her. Id. at 628. Based on this, the Court found that the
21 claimed discriminatory act was the decision, made years before, to pay Ms. Ledbetter less
22 than similarly-situated male employees.

23 The Court concluded that "Ledbetter should have filed an EEOC charge within 180
24 days after each allegedly discriminatory pay decision was made and communicated to her."
25 Because she did not do so, "the paychecks that were issued to her during the 180 days
26 prior to the filing of her EEOC charge do not provide a basis [e.g., on a continuing violations
27 theory] for overcoming that prior failure." Id. at 628-29.

28 Thus, under the Ledbetter decision, each discriminatory payment made to an

10

employee was considered a "discrete act," and a single administrative charge related to only those discriminatory payments that occurred fewer than 180 days (or 300 days, depending) prior to the date of filing the charge. Moreover, the alleged discriminatory payments were not actionable if they were made based on a decision that pre-dated the charging period.

On January 29, 2009, President Obama signed into law the Ledbetter Fair Pay Act (the "FPA"). The FPA took effect as if enacted on May 28, 2007, and applies to all claims of discrimination in compensation that were pending on or after that date. 42 U.S.C. § 2000e-5 Note. In enacting the FPA, Congress found that the Ledbetter decision

> significantly impairs statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades. The Ledbetter decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory decisions or other practices, contrary to the intent of Congress.

Id.

The FPA amended § 2000e-5(e) by adding at the end the following:

> (3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
>
> (B) In addition to any relief authorized by [42 U.S.C. § 1981s], liability may accrue and an aggrieved person may obtain relief as provided in [42 U.S.C. § 2000e-5(g)(1)], including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during that charge filing period are similar or related to the unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

In addition, under the FPA, victims of pay discrimination

> are entitled to the full back pay amount available – up to two years of back pay as already provided under [42 U.S.C. § 2000e-5(g)(1)]. This section is added to ensure that back pay in cases such as Ledbetter are not limited to 180 [or 300] days. The statute of limitations period and the back pay recovery period are two separate periods in the [FPA].

11

H.R. Rep. 110-237, at 19 (2007).

Plaintiffs assert that the legislative history of the FPA confirms that "plaintiffs may challenge 'department assignments' that occur well after the initial job assignment, to the extent they affect compensation." The court finds, however, that plaintiffs have not established that the FPA provides support for the proposition that the court should consider any claims of "initial assignments" that are outside the limitations period as actionable under a "continuing violations" theory.

The FPA establishes that the unlawful employment practice is the payment of a discriminatory salary, not necessarily the original setting of the pay level (although that can be discriminatory as well). While the FPA does change the definition of when an "unlawful employment practice occurs, with respect to discrimination in compensation;" and also permits a victim of discrimination who files a timely EEOC charge as to at least one instance of pay discrimination to recover back pay for pay discrimination that occurred during the two years preceding the filing of the charge, if such preceding discrimination is "similar or related to" the practice that is the subject of the timely-filed charge, nothing in the FPA otherwise modifies the limitation period during which a charge must be filed.

In their third main argument, plaintiffs contend that the named plaintiffs may represent class members with "initial job assignment" claims, based on the fact that the named plaintiffs have timely "job assignment" claims under Title VII and FEHA with respect to post-hire assignments. Plaintiffs claim that it is "well settled" that individuals who suffered discrimination in post-hire assignments can challenge initial hiring decisions also. They note that Title VII makes actionable employer actions that "limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee," due to race, sex, or national origin (citing 42 U.S.C. § 2000e-2(a)(2)).

Plaintiffs assert that under the permissive standards of Federal Rule of Civil Procedure 23(a), representative claims are "typical" if they are reasonably coextensive with those of absent class members, and that job assignment claims are like promotion claims

12

1    in that plaintiffs are not required to have a class representative for each position within the
2    class. In support, they cite Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

3          In Staton, after the district court had certified a plaintiff class in an employment
4    discrimination lawsuit and entered a consent decree, a group of class members objected to
5    the proposed consent decree on the basis that the class failed to meet certification
6    requirements, and also argued that the settlement was unfair, inadequate, and
7    unreasonable. The Ninth Circuit found that the named plaintiffs were not required to
8    establish that each "job category" had a class representative for each type of discrimination
9    claim alleged. Id. at 957. Staton is distinguishable, however, on the basis that the court did
10   not consider whether the named plaintiffs had standing to assert any particular claim.

11         Here, by contrast, the Title VII and FEHA "initial assignment" claims are plainly time-
12   barred, as none of the named plaintiffs filed an administrative charge within one year of the
13   alleged discrimination. Thus, they cannot represent a class on such claims. See Lierboe v.
14   State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022-23 (9th Cir. 2003) (if named
15   representatives do not have a claim, they cannot represent others who may have such a
16   claim).

17         In a related argument, plaintiffs assert that courts "frequently" hold that employees
18   assigned to jobs at later stages of their careers may present class claims for unequal job
19   assignments that encompass initial job assignments. In support, they cite Stender v. Lucky
20   Stores, Inc., 1990 WL 192734 at *5 (N.D. Cal., June 8, 1990), which they contend is nearly
21   identical to this case.

22         In Stender, the named plaintiffs alleged job discrimination, not necessarily in initial
23   job assignments. They asserted that the defendant Lucky Stores maintained a policy and
24   practice of denying hours, full-time work, desirable job assignments and shifts, training, and
25   promotional opportunities to female and black employees. The parties stipulated to a
26   partial class definition, but disputed certain class issues, including whether the class
27   encompassed those complaining of discrimination in their initial assignment at Lucky. The
28   plaintiffs argued that all job assignment decisions were based on subjective

decisionmaking. The court held that plaintiffs alleging discrimination in job assignments at any stage of their careers could serve as representatives of a class that included employees who suffered discrimination in initial job assignments. Id.

The decision in Stender was premised on the plaintiffs' allegations that Lucky Stores practiced "the same entirely subjective decision-making process for making initial assignments" as it did for making decisions about promotion, shifts, hours, and so forth. See id., 1990 WL 192734 at *7. However, while the court held that employees with different types of claims than the named plaintiffs (and those in different positions than the named plaintiffs) could comprise a class, the court (as in Staton) did not address the question whether the named plaintiffs could represent class members with initial hiring claims if their own initial hiring claims were time-barred.

Moreover, Stender is a 1990 decision, which predated Morgan by 12 years. In Morgan, the Supreme Court held that "[a] discrete retaliatory or discriminatory act 'occurred' on the day it happened." Id., 536 U.S. at 110. That is, where a discrete act provides the basis for a discrimination claim, the timely filing period begins to run from that date. Id. Such acts are "not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. at 113.

In the decision below, Morgan v. National Railroad P. Corp., 232 F.3d 1008 (9th Cir. 2000), the Ninth Circuit held that under its prior rulings, a plaintiff could establish a "continuing violation" in two ways. The first way was by showing a series of related acts, one or more of which are within the limitations period. In such a "serial violation" the evidence "indicates that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period" – i.e., "the alleged incidents of discrimination cannot be isolated, sporadic, or discrete." Id. at 1015.

The second way was by showing "a systematic policy or practice of discrimination that operated, in part, within the limitations period – a systemic violation." The court explained that "[s]ystemic violations involve 'demonstrating a company wide policy or practice' and most often occur in matters of placement or promotion." Id. at 1015-16.

14

On review, the Supreme Court invalidated the "related acts" method of establishing a continuing violation, stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113. The Court distinguished between harassment-based and non-harassment-based claims under Title VII, holding that plaintiffs may not establish employer liability for events occurring prior to the statutory limitations period in non-harassment-based claims, even if events occurring outside of the limitations period form part of a "pattern" extending to events that are not time-barred. Id. at 114-15.

These non-harassment-based claims included claims for termination, failure to promote, denial of transfer, refusal to hire, and retaliation. The Court commented, "We have repeatedly interpreted the term "practice" [referring to the statutory term "unlawful employment practice"] to apply to a discrete act or single "occurrence," even when it has connection to other acts." Id. at 111.[4]

The Court distinguished the harassment-based claims on the basis that hostile environment claims, by their very nature, involve repeated conduct. Thus, "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. "Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." Id. at 118.

The Court concluded that while a Title VII plaintiff raising claims of discriminatory or retaliatory acts must file his charge within the statutory time period, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act

---

[4] In a 2003 decision in a case alleging disparate treatment based on failure to hire on three separate occasions, the Ninth Circuit interpreted the language in Morgan to mean that "a discriminatory practice, although it may extend over time and through a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of which must be brought within the statutory limitations period." Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1192 (9th Cir. 2003).

falls within the time period." Id. at 122.[5]

However, the Court expressly noted that it had "no occasion here to consider" the question with respect to "pattern or practice" claims brought by private litigants, as none were at issue in the case before it. See id. at 115 n.9; see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829 n.3 (9th Cir. 2003).  Thus, after Morgan, it is unclear whether a plaintiff might be able to invoke the continuing violation doctrine if he shows "systematic policy or practice of discrimination that operated, in part, within the limitations period" – the second type of continuing violation theory that has been recognized by the Ninth Circuit.

Although plaintiffs suggest in their opposition that because the TAC alleges that this is a "pattern or practice" case, the continuing violations doctrine permits them to evade the statute of limitations on the Title VII and FEHA "initial assignment" claims, neither party has adequately briefed this issue.  Moreover, in the absence of Ninth Circuit or Supreme Court authority, the court is unwilling to carve out an exception to Morgan solely on the basis that the TAC asserts discrimination under a "pattern or practice" theory.

In addition, and more significantly, the law is clear that "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." Lierboe, 350 F.3d at 1022 (quotation and citation omitted).  In class actions, the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Id.  Accordingly, the plaintiffs herein cannot represent the class on Title VII and FEHA claims of initial job assignments.

---

[5] The court also notes that for purposes of the "continuing violations" doctrine, the California Supreme Court has rejected an absolute distinction between discrimination and retaliation, on the one hand, and hostile work environment on the other, suggesting instead that the result would depend on the facts of each case. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1057-59 (2005).

16

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion for judgment on the pleadings. The claims of discrimination in initial job assignments alleged in the first, third, fourth, and fifth causes of action are dismissed.

Even in a class action, "constitutional standing requirements [must be] satisfied before proceeding to the merits." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). It is a requirement that at least one named plaintiff satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class. Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1001 n. 7 (9th Cir. 2006). Here, defendants are correct in asserting that none of the named class members has standing to represent unnamed class members with Title VII or FEHA "initial job assignment" claims, as those claims are time-barred as to all the named plaintiffs. See Lierboe, 350 F.3d at 1022.

With regard to plaintiffs' request to seek leave to amend the complaint to include a named plaintiff who suffered discrimination in initial job assignment within the relevant Title VII and FEHA time periods, the court denies the request as untimely and prejudicial in view of the fact that the hearing on the motion for class certification is set for hearing in less than a week, the fact that discovery is closed and that Best Buy would therefore be foreclosed from seeking discovery from any new named plaintiff, and the fact that the complaint has already been amended three times.

**IT IS SO ORDERED.**

Dated:  May 28, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge